IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| LORNA ANNE SPACKMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:14-cv-04125-NKL |
| | ) | |
| CAROLYN W. COLVIN | ) | |
| ACTING COMMISSIONER | ) | |
| OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff Lorna Spackman seeks review of the Administrative Law Judge's decision denying her application for Social Security benefits. For the following reasons, the decision is reversed, and the case is remanded for reconsideration.

**I.   Background**

**A.  Spackman's Medical History**

Spackman seeks Social Security benefits for disabilities beginning in April 2011. She first sought treatment for fibromyalgia and edema in May 2011. That same month, Spackman spent three days in the hospital due to chest pain. [Tr. 364]. After receiving treatment for a pulmonary embolism, she was prescribed Coumadin. *Id.* In August, her dose of Coumadin was increased. [Tr. 246]. A month later, she reported to Dr. Barton Warren that she was experiencing symptoms of pain, joint stiffness, muscle aches, and headaches that limited her activities. [Tr. 300]. In October 2011, Dr. Warren diagnosed Spackman with multiple arthralgias and myalgias, hypertension, hypothyroidism, and

history of pulmonary embolus. [Tr. 297]. In November, Spackman stopped Coumadin therapy due to the side effects of the drug. [Tr. 246]. In December, Spackman saw Dr. Miriam Borden, a rheumatologist. Dr. Borden noted that Spackman's symptoms were consistent with fibromyalgia. [Tr. 270].

In February 2012, an ultrasound was taken of Spackman's thyroid, which showed an enlarged thyroid gland with numerous modules. [Tr. 239]. In March, Spackman complained of difficulty swallowing and pain in her neck. [Tr. 294]. The next month, Spackman told Dr. Borden that she was feeling better. [Tr. 329]. In July, Spackman reported that she had experienced three episodes of her fingertips tingling and becoming white, and then red and flushed. [Tr. 326]. She also reported muscle pain. *Id.* Dr. Borden diagnosed Spackman with Raynaud's syndrome and increased her doses of gabapentin and tramadol. [Tr. 327].

In January 2013, Spackman reported tingling on her tongue, dizziness resulting in falls, leg edema, and difficulty expressing words. [Tr. 322]. Dr. Borden adjusted Spackman's medications to correct for some of these adverse side effects. [Tr. 323]. In March, Spackman told Dr. Rochelle Vale, her primary care physician, that she was experiencing severe fatigue, pain and stiffness and episodes of losing control of her muscles. [Tr. 350]. She also reported that during the episodes she lost the ability to speak, and that she was having general problems with high blood pressure and increased migraines. *Id.* Dr. Vale completed a medical statement in 2013 that indicated that Spackman suffered from widespread pain, pain in more than 11 pressure points, stiffness,

2

tension headaches, sensation of swollen hands, chronic fatigue, and memory loss. [Tr. 357]. Dr. Vale opined that Spackman could work for only four hours per day. *Id.*

### B. ALJ Decision

The Administrative Law Judge ("ALJ") denied Spackman's request for disability benefits, concluding that she had the Residual Functional Capacity ("RFC") to engage in substantial gainful activity. The ALJ concluded that despite Spackman's severe impairments of fibromyalgia, headaches, history of pulmonary embolism, enlarged thyroid, hypothyroidism, right leg sciatica, hypertension, and obesity, she retained the following RFC:

> [T]o perform sedentary work as defined in 20 CFR 404.1567(a); however, she is limited to occasional stooping, kneeling, crouching and crawling; frequent handling and fingering and she requires a sit/stand option every 30 minutes.

[Tr. 17]. A vocational expert testified that with this RFC, an individual would be able to perform the requirements of occupations such as hospital admitting clerk and food/beverage order clerk. [Tr. 23].

In determining the RFC, the ALJ considered the medical evidence of the record, as well as Spackman's testimony at the administrative hearing regarding the extent of her symptoms. At the administrative hearing, Spackman complained that she suffered from migraines, shaky and cold hands several times a day, shortness of breath, and overall constant pain. [Tr. 36, 40-43]. She reported difficulty swallowing, nausea, diarrhea, and fatigue. [Tr. 36, 41]. She stated that she could stand for 10-15 minutes at a time, walk 50 yards, and sit 15-20 minutes at a time and 2-3 hours total in a day. [Tr. 41-42, 47].

3

She also reported using a cane. [Tr. 44]. She testified that she was able to get her children and husband up for school and work, watch television, go out to get the mail, and do light housework such as laundry and vacuuming with breaks. [Tr. 39].

**II.     Standard**

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision 'simply because some evidence may support the opposite conclusion.'" *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

**III.    Discussion**

Spackman argues that the ALJ erred in (1) failing to provide a proper RFC determination and dismissing Dr. Vale's opinion, and (2) determining that Spackman's testimony was not entirely credible and failing to perform a proper credibility analysis. The Court concludes that Spackman's medical records contain substantial evidence to support the ALJ's decision to discount Dr. Vale's opinion, but insufficient evidence to justify the RFC determination.

**A. RFC Determination**

Spackman contends that the ALJ erred in failing to provide controlling weight to Dr. Vale's opinion. Alternatively, Spackman argues that if it was proper to disregard Dr.

Vale's opinion, the record lacks sufficient evidence for the ALJ to make an RFC determination.

In evaluating medical source opinions, an ALJ should consider whether the medical source examined the claimant, whether the medical source was a treating source, the length, nature, and extent of the treatment relationship, how well the medical source supported her opinion with relevant evidence, how consistent the medical source's opinion is with the record as a whole, whether the medical source was a specialist, and any other factors supporting or contradicting the opinion. 20 C.F.R. § 404.1527(c). A treating physician's opinion is not entitled to controlling weight if it is not supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the record. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2008). In this case, Dr. Vale's opinion is both internally inconsistent and inconsistent with the other evidence of the record.

Dr. Vale provided two medical statements describing the extent of Spackman's disabilities. [Tr. 357-360]. In the first statement, Dr. Vale stated that Spackman could stand for 15 minutes at one time, stand for 2 hours in a workday, sit for 30 minutes at a time, sit for 2 hours in a workday, lift 5 pounds on an occasional basis, and occasionally bend and stoop. [Tr. 357]. In the second statement, Dr. Vale stated that Spackman could stand and/or walk for less than 15 minutes continuously, stand and/or walk for less than 1 hour throughout the day, sit continuously for 45 minutes, sit for 2 hours throughout an 8 hour work day, and was limited in her abilities to push and/or pull. [Tr. 359]. She also stated that Spackman could never kneel, crouch, crawl, climb or balance, but could

5

occasionally stoop, reach, handle, finger, and feel. [Tr. 360]. These two statements contradict one another, particularly with regard to Spackman's ability to stand throughout the day.[1]

Dr. Vale's assessment of the extent of Spackman's disabilities is also inconsistent with the remainder of the record. In January 2012, Dr. Michael Wang noted that Spackman had normal muscle strength, sensation, and gait. [Tr. 312]. Two months later, Dr. Warren noted that her pulmonary embolus had resolved. [Tr. 313]. In April 2012, Spackman reported to Dr. Borden that she felt better and had lost four pounds since her previous visit. [Tr. 329]. Finally, two weeks after Dr. Vale rendered her opinion, Dr. Muthu Krishnan saw Spackman and noted that she suffered from no fatigue, normal range of motion, stability, strength, and tone, and good memory and speech. [Tr. 437]. These notations directly contradict Dr. Vale's opinions. These contradictions combined with the internal inconsistencies in Dr. Vale's opinions provide substantial evidence to support the ALJ's decision to accord little weight to her conclusions.

Although the record contains substantial evidence to support the ALJ's decision to discount Dr. Vale's opinions, the record contains no other opinions from Spackman's medical providers regarding her physical capacity and ability to work.[2] Therefore, the

---

[1] While other statements are also somewhat inconsistent, the notations regarding Spackman's ability to walk, a vital part of any job functioning, are inconsistent despite the fact that the check-box forms contained check-box options that would have allowed for consistent notations.

[2] Spackman also contends that the ALJ erred in relying on the opinion of a single decision-maker in assessing the RFC. The single-decision maker opined that Spackman might be limited to light work. [Tr. 313]. Though the ALJ did not adopt this opinion in the RFC and she specifically recognized at the administrative hearing that it was not

6

Case 2:14-cv-04125-NKL   Document 11   Filed 02/09/15   Page 6 of 10

occasionally stoop, reach, handle, finger, and feel. [Tr. 360]. These two statements contradict one another, particularly with regard to Spackman's ability to stand throughout the day.[1]

Dr. Vale's assessment of the extent of Spackman's disabilities is also inconsistent with the remainder of the record. In January 2012, Dr. Michael Wang noted that Spackman had normal muscle strength, sensation, and gait. [Tr. 312]. Two months later, Dr. Warren noted that her pulmonary embolus had resolved. [Tr. 313]. In April 2012, Spackman reported to Dr. Borden that she felt better and had lost four pounds since her previous visit. [Tr. 329]. Finally, two weeks after Dr. Vale rendered her opinion, Dr. Muthu Krishnan saw Spackman and noted that she suffered from no fatigue, normal range of motion, stability, strength, and tone, and good memory and speech. [Tr. 437]. These notations directly contradict Dr. Vale's opinions. These contradictions combined with the internal inconsistencies in Dr. Vale's opinions provide substantial evidence to support the ALJ's decision to accord little weight to her conclusions.

Although the record contains substantial evidence to support the ALJ's decision to discount Dr. Vale's opinions, the record contains no other opinions from Spackman's medical providers regarding her physical capacity and ability to work.[2] Therefore, the

---

[1] While other statements are also somewhat inconsistent, the notations regarding Spackman's ability to walk, a vital part of any job functioning, are inconsistent despite the fact that the check-box forms contained check-box options that would have allowed for consistent notations.

[2] Spackman also contends that the ALJ erred in relying on the opinion of a single decision-maker in assessing the RFC. The single-decision maker opined that Spackman might be limited to light work. [Tr. 313]. Though the ALJ did not adopt this opinion in the RFC and she specifically recognized at the administrative hearing that it was not

ALJ had insufficient evidence to accurately assess Spackman's RFC. The Eighth Circuit has acknowledged that although "an ALJ's assessment off [the RFC] must be supported by some medical evidence of the claimant's ability to function in the workplace . . . it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). In this case, however, the record contained insufficient evidence for the ALJ to reach an RFC determination without additional medical opinions. *See Wadsworth v. Astrue*, 2011 WL 900993 (W.D. Mo. March 15, 2011) (reversing and remanding the ALJ's decision when the ALJ discounted the treating physician's opinion and the record contained no other medical evidence to support a determination as to the claimant's RFC).

Spackman has extensive medical records evincing treatment for pulmonary embolism, thyroid problems, and fibromyalgia. Though she was consistently free of pain and significant weakness during her examinations, she routinely complained of intermittent pain, tenderness, fatigue, and other symptoms consistent with fibromyalgia. [Tr. 270, 323, 325, 327, 330]. Her course of treatment was mild, but was consistent with the general course of treatment for fibromyalgia. *Brosnahan v. Barnhart*, 336 F.3d 671, 672 n.1 (8th Cir. 2003) ("Treatments for fibromyalgia include cold and heat application, massage, exercise, trigger-point injections, proper rest and diet, and medications such as muscle relaxants, antidepressants, and anti-inflammatories."). As Dr. Warren informed

---

rendered by a medical source, the ALJ stated in her decision that she "assigned great weight to the opinion." As the opinion was rendered by a single-decision maker and not a medical expert, the ALJ should be careful not to accord this opinion greater weight than it is due on remand.

7

Spackman in March 2012, "the spectrum of fibromyalgia [is] from mild to severe and . . . the [diagnosis] does not necessarily imply that a person is disabled." [Tr. 313]. However, the record contains no opinion from a physician regarding the severity of Spackman's fibromyalgia. *See id.* at 678 ("We have recognized that fibromyalgia can be disabling because of its potential for sleep derangement and resulting daytime fatigue and pain.").

The record contains no evidence regarding Spackman's ability to perform sedentary work. It also contains no evidence to support the ALJ's conclusions that Spackman is capable of "occasional . . . kneeling, crouching and crawling" and "frequent handling and fingering." The ALJ's conclusions regarding Spackman's specific abilities to kneel, crouch, crawl, handle, and finger are particularly suspect in light of the remainder of the record, which indicates that Spackman used a cane to get around, could not complete household tasks that required kneeling or crouching, and had difficulties opening containers due to her fibromyalgia and Raynaud's syndrome. In light of the inconclusive medical evidence in the record, the ALJ could not accurately assess Spackman's RFC without acquiring additional medical opinions regarding Spackman's functional capacity.

### B. Evaluation of Spackman's Credibility

Spackman next contends that the ALJ failed to perform a proper credibility analysis as to her testimony.

Credibility determinations are left primarily to the ALJ. *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). In analyzing a claimant's subjective complaints, the ALJ is

to consider the entire record including the claimant's medical records, third party statements, the claimant's statements, and factors including (1) the claimant's activities of daily living; (2) the duration, frequency, and intensity of pain and other symptoms; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

The ALJ evaluated these factors and found that Spackman's descriptions of her impairments were not entirely credible. Specifically, the ALJ noted that since her alleged onset date in April 2011, she did not have any frequent hospitalizations, emergency room visits, or surgical treatment for her conditions. However, as noted above, treatment for fibromyalgia generally does not involve any of these courses of treatment. *See Brosnahan*, 336 F.3d at 672 n.1. Spackman was prescribed pain medication, muscle relaxers, a sleep aid, and an antidepressant, all of which are consistently prescribed to treat fibromyalgia. *Id.* The ALJ further noted that Spackman's "functioning is generally within normal limits despite some symptoms of pain," but the record contains little if any medical evidence of Spackman's true functional abilities.

The ALJ also relied on Spackman's testimony at the administrative hearing that she was able to get her children and husband up for school and work, watch television, go out to get the mail, and do light housework such as laundry and vacuuming with break to discount her account of the severity of her symptoms. However, Spackman's limited ability to complete household chores is not necessarily indicative of her ability to sustain

9

substantial gainful employment, and does not provide independent grounds for the ALJ to disregard Spackman's testimony. *See Burress v. Apfel*, 141 F.3d 875, 881 (8th Cir. 1998).

As the existing medical evidence in the record is insufficient to determine Spackman's RFC and the extent of her medical impairments, the ALJ should revisit her evaluation of Spackman's credibility on remand in light of any additional medical evidence. The ALJ should also consider Spackman's work history in evaluating her credibility, as it is suggestive of Spackman's desire to work if able.

**IV.     Conclusion**

For the reasons set forth above, the ALJ's decision is reversed, and the case is remanded for further consideration.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated:  February 9, 2015  
Jefferson City, Missouri